KUICK v. CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—SEWERS—CHARTER PROVISIONS.
    In proceedings to establish sewers cities must observe the charter regulations, and the different steps should be taken in the order prescribed and in strict observance of the same.

2. SAME—EXTENSION AND IMPROVEMENT OF EXISTING SEWER.
    That a sewer has been constructed for some distance in a city street does not prevent its extension and enlargement, as the necessities of property owners farther out on the street may require, or the public health may demand.

3. SAME—SEWERS—VESTED RIGHTS.
    Property owners on the street did not own the tile and had no vested right to have the old sewer maintained.

4. SAME—NECESSITY—JURISDICTION—RESOLUTION OF COUNCIL—INJUNCTION.
    In proceedings by property owners to have declared void an

assessment for a sewer tax and to enjoin the collection of the same, where the sewer was built according to the plans, under plaintiff's observation, and no one was deceived as to the nature of the actual improvement, it cannot be contended that the resolution declaring the improvement a public necessity was insufficient to confer jurisdiction because it provided for lowering the existing sewer, while in fact it was also enlarged and extended and the tile in the old part was either destroyed or used in constructing the extension.

5. SAME—SEWERS—BENEFITS.
    Nor could it be seriously contended that plaintiff's property was not benefited by the improvement.

6. SAME—ASSESSMENT ACCORDING TO BENEFIT—PRESUMPTIONS—EVIDENCE.
    Where the assessment was ordered by the city council to be made according to benefits, it will be presumed that the same was done, in the absence of any testimony to the contrary.

7. SAME—ABATEMENT OF TAX—EQUITY.
    The validity of the special tax roll is not affected by the fact that the council was or will be influenced, upon equitable considerations, to abate what plaintiffs would otherwise have to pay by reason of the fact that they had once paid a tax for the old sewer.

Appeal from superior court of Grand Rapids; Dunham, J.   Submitted January 16, 1918.   (Docket No. 96.)   Decided March 27, 1918.

Bill by John E. Kuick and others against the city of Grand Rapids and another to set aside the proceedings for the assessment and collection of a sewer tax. From a decree dismissing the bill. plaintiffs appeal. Affirmed.

*S. Wesselius* and *Dorr Kuizema,* for plaintiffs.

*Ganson Taggart,* City Attorney, and *Charles A. Watt,* Deputy City Attorney, for defendants.

OSTRANDER, C. J.   In the city of Grand Rapids, West Leonard street extends from Bristol street, the city

limits on the west, eastward, and it seems from the plat found in the record that it intersects, first, West Street, then Powers street, and then Tamarack street, which last named street makes the eastern boundary of the district about which we are concerned. The west 800 feet fronting West Leonard street on the north and south is a cemetery, Frederick street opens out of West Leonard on the north and White street on the south, in the district west of West street.

It appears that in the year 1901 a sewer was constructed in West Leonard street from Tamarack to West, its size from Tamarack west to Powers street being 24 inches, and from Powers to West street 18 inches, and for the purpose a sewer district was made, upon which the cost of construction was assessed. The old sewer emptied at Tamarack street into a 9-inch sewer, causing some trouble at times, backing up water and flooding cellars on the West Leonard street line. Before the events related hereinafter this defect had been remedied. It is perhaps a necessary implication from the facts testified to that a natural water course existed on Tamarack street, that it was converted into a sewer in some way, and that the flow from the West Leonard street sewer was thereafter taken care of. There is testimony, not disputed, to the effect that thereafter the West Leonard street sewer, as it was constructed, answered its purpose and the needs of property connected with it.

In June, 1909, a resolution of the common council was adopted which requested the board of public works to furnish an "approximate estimate" of the cost of lowering the sewer and laterals in West Leonard street running from Tamarack west to West street and the construction of a sewer in West Leonard street from West street to the east line of Greenwood cemetery, necessary storm water conduits, branches, manholes and laterals, etc., "the construction of said sewer

being a necessary public improvement." Pursuant thereto, a report was furnished, the approximate estimate of cost being $11,310. Of date October 4, 1909, the common council resolved that the lowering of the said existing main and lateral sewers and the construction of the sewer from West street to the east line of the cemetery, including catch basins, etc., "is a necessary public improvement." Then, October 25, 1909, a contract was reported and presented to the common council for construction of the improvement, the approximate cost stated being $10,633.26. It was approved and the mayor empowered to execute it for the city. In order, there followed action of the common council as follows: In December, the committee on districts was asked to locate a district to be assessed for the said improvement, in the same month $1,000 was transferred temporarily from the sixth ward highway fund to the West Leonard street, Tamarack and West street sewer fund, "to be credited *pro rata* to the property owners between Tamarack street and West street as assessed for construction of said sewer, to be reimbursed later from the Second Sewer District fund"; in January, the committee on districts made a report, fixing a sewer district, and the report was adopted. Final estimates of cost were submitted May 23, 1910, the total cost being $11,980. In June, 1910, the entire cost as so reported was ordered assessed upon the owners and occupants of lands and houses benefited by the improvement, determined to be lands as reported by the committee on districts. The board of assessors was ordered to make the assessment "as nearly as may be" in proportion to benefits. The roll was presented in September, 1910, and the evening of September 19, 1910, fixed for hearing appeals and notice of the opportunity ordered given by publication. On the evening fixed, there were a number of appeals. Further action was from time to

time postponed. It is apparent that the common council recognized some equitable or legal right of persons owning property abutting on the old sewer, to some credit on account of what had been paid for its construction, and the fact that some of the material in the old sewer was used in the new, at a point further west. The committee on appeals recommended, October 31, 1910, that the board of assessors furnish the committee with certain information, namely, amount of assessments of lots on both sides of the street from Tamarack to West street on the basis of 25 cents per front foot, including intersections, and West street to end of West Leonard street on basis of actual cost of sewer and 10 cents per foot, including intersections for trunkage; also the balance that would have to be paid from the general fund on this basis. The information was called for and was furnished. Sitting as a committee of the whole, the common council, December 27, 1910, recommended that the roll be set aside and a new one prepared assessing the cost of the improvement on the district as though the sewer was a new one, not taking into account the old sewer, and that property owners who had paid for the old sewer be given credit on the new roll for the amount of their assessments for the old sewer, and that the total of such credits, fixed at the sum of $3,110, be paid from the general fund. The testimony does not show that this report was adopted, but the answer of the city admits that it was. Following this, January 9, 1911, the common council by resolution ordered the total of the expense, $11,980, assessed upon owners and occupants of lands and houses in the district benefited by the improvement. A new roll was presented January 30, 1911.

It is inferred that the owners of property served by the old sewer on West Leonard street, if not antagonistic to the proposed improvement, were insisting

that with respect to the cost thereof little or none of it should be assessed to them, and this upon the theory that the improvement did not in fact considerably benefit them or their property. Another contention was that material in the old sewer was used in the new one at a point further west in the street and that they ought to have some credit for the value thereof. A number of taxpayers appealed from the order confirming the first assessment roll, and when the second roll was confirmed 27 or more appealed, grounding their appeal upon the propositions: .

"*First.* Because the construction of said sewer is of no benefit to our respective properties, and said assessment therefor is not based upon benefits derived.

"*Second.* The property owned by us was assessed for a sewer in said street in the year 1903, and which assessment was paid.

"*Third.* Because said assessment is not spread against our respective property for benefit received by it.

"*Fourth.* Because we were not notified for the proposed construction of said sewer and the same was constructed by said city without our consent.

"*Fifth.* Because we were assured, after said construction was let, by the aldermen of said ward and the chairman of said committee of the assessment district, that the taxes therefor would not exceed ten dollars per lot.

"*Sixth.* Because said assessment amounts to a practical confiscation of our property without corresponding compensation therefor.

"*Seventh.* Because said roll is irregular, not in conformity with the law, inequitable and unjust."

Meantime, the sewer had been constructed and, as the court below found, construction went on from day to day under the observation of the appellants, according to plans adopted by the city and on file in the proper office, so that no one was deceived about the nature of the actual improvement.

Thirty-five owners of property assessed for the im-

provement joined as plaintiffs in the bill filed March 27, 1915, the purpose of which is to have declared void the proceedings for the assessment and collection of the taxes, and to enjoin further effort to collect the same. Fraud and deception are not charged. The issue joined having come on to be tried in open court, a decree was entered dismissing the bill. In the brief for appealing plaintiffs the propositions argued are:

(1) The new sewer was of no benefit to the property owners assessed therefor between Tamarack and West streets.

(2) The construction of the new sewer was not authorized by the resolution declaring the lowering of the existing sewer a necessary public improvement.

(3) The assessment was not according to benefits, and credits for the old sewer were not properly given.

(4) The property owners cannot be said to be guilty of laches and are not estopped from contesting the assessment.

Counsel do not much disagree about the law. It is agreed that there is a presumption in favor of proper, as distinguished from improper, official action and that taxpayers have the right to assume that such improvements will be made and the cost thereof levied and collected in accordance with the law. It is agreed that the assessment cannot exceed the benefit to be derived from the improvement and that the theory sustaining such levies is that the party assessed is locally and peculiarly benefited over and above the ordinary benefit which as one of the community he receives in all public improvements, to the precise extent of the assessment. *White* v. *City of Saginaw,* 67 Mich. 33; *City of Detroit* v. *Judge of Recorder's Court,* 112 Mich. 588; *City of Detroit* v. *Daly,* 68 Mich. 503. But in applying these rules it is necessary to observe some other rules. Cities must have sewers. The law, in this case the charter of Grand Rapids,

has pointed out the steps which must be taken to secure them. These the officials must usually take in the order prescribed and in rather strict observance of the charter, exercising always good faith.

A study of the record has not convinced me that any of plaintiff's contentions ought to be sustained. The idea that their property was not at all benefited by the improvement is preposterous. The fact that a sewer has been constructed for some distance in a city street does not prevent its extension and enlargement as the necessities of property farther out on the street may require, or the public health may demand. The new improvement involved the old, and might of course destroy the old one entirely. In fact, it did destroy it, in this case, larger tile being used and laid at a greater depth than the old tile. Farther west, where the sewer was smaller, the old tile, all or some of it, was utilized. But plaintiffs did not own the tile and had no vested right to have the old sewer maintained. It is said that the jurisdictional step of declaring the proposed improvement a public necessity was not taken because the resolution provided for *lowering* the old sewer when in fact a new sewer was proposed and was constructed. The argument is based upon the notion that the term *lowering the existing sewer* means and must mean simply sinking it, and what is in it, to a greater depth. This is made evident by the following excerpt from the brief for plaintiffs:

"It will not do for defendant to say: 'It does not mean a great deal to the engineering department whether a sewer was spoken of as being a lowered or constructed sewer.' It does mean a great deal to the people affected, whose only notice is in the words of the resolution, who are not technical men, and who have not the advantage of private information and instruction as has the engineering department, that the thing apparently contemplated by a resolution is not the real thing that is to be done."

Undoubtedly, the common council should not make a different improvement from the one declared necessary. But how does the case here stand? There was an old sewer in West Leonard street, perhaps 1,300 feet in length. West of its western terminus the street extended some 1,800 feet, and a sewer for that additional distance was desired—was deemed to be a public necessity. Engineering demanded a fall in the level of the sewer to the east. A proper fall (we must assume) carried it below the level of the old sewer, and proper size made the old 18-inch and 24-inch sewer too small. A sewer district had been created when the old sewer was laid, and it embraced nearly all of the territory put into the new district. All of these facts have significance when the language employed by the common council in describing the proposed improvement is read. The resolution implies that when finished there will be but one continuous sewer in West Leonard street, which will traverse the region occupied by the old sewer but be deeper in the earth than the old sewer is. I am impressed that no one should have been deceived by the language of the resolution and that it ought not to be held that the proposed and the declared improvement are two different things. It will be held, therefore, that jurisdiction to do what has been done was acquired, and that it is not made to appear that plaintiff's property was not benefited. This disposes of the contentions that the proceedings ought to be set aside and the city enjoined from collecting the cost of the improvement.

Assuming, what is questionable, that plaintiffs have the right, in this proceeding, to contest the amount of the assessment, they must at least point out either that the method of assessment adopted was all wrong or that, applying a proper method, a wrong result is apparent. This I think they have not done. An as-

sessment according to benefits was ordered and presumably was made. That plaintiffs had once paid a tax for the old sewer is not of itself a reason for holding that the assessors have not performed their duty. The validity of the roll is not affected by the fact that the common council was or will be influenced, upon equitable considerations, to abate what plaintiffs would otherwise have to pay.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE and KUHN, JJ., concurred.