HACK *v.* CITY OF DETROIT.
DUNN ENGINEERING CO. *v.* SAME.
DeMARE *v.* SAME.

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS FOR SEWERS—
   FINDINGS OF TRIAL JUDGE—RECORD.
   
   In suit by owners of unplatted property to vacate special assessments for new city sewer, review *de novo* held, to require substantial concurrence in findings of trial judge that previously-issued permits for temporary use of near-by lateral sewer for the construction of which plaintiffs' land had not been assessed did not foreclose or estop city from constructing new permanent sewer to serve plaintiffs' properties, that determination of adequacy of sewer facilities was for municipal authorities and not subject to court intervention except for mistake or abuse of discretion amounting to fraud, that the new permanent sewer was constructed according to law, that property owners have been tendered repayment of amounts paid for temporary previous permits and that they were assessed proportionate share of cost of new and permanent sewer.

2. SAME—SPECIAL ASSESSMENTS FOR SEWERS—DISCRIMINATION—RE-
   PAYMENT OF FEES FOR PREVIOUS PERMITS.
   
   Any discrimination between property owners in city special assessment district for sewer by virtue of previous access to other sewer facilities was avoided by ordinance requirement that sums paid for such previous connection be refunded upon request and tender thereof made.

3. SAME—TEMPORARY PERMITS TO CONNECT SEWERS—APPROVAL—
   WAIVER.
   
   Where for over 20 years it has been the practice to issue temporary permits for sewer connection without the approval of

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am. Jur., Drains and Sewers, § 50.
[5] 17 Am. Jur., Drains and Sewers, § 74.
[5] Loss of right to contest assessment in drainage proceedings by waiver, estoppel, or the like. 9 A.L.R. 634.

a three-fourths vote of all of the aldermen-elect, as required by city ordinance, the city would be estopped to object to a temporary permit issued without such approval, as such an ordinance requirement may be waived either expressly or by course of conduct indicating an intention to do so (Detroit Compiled Ordinances 1936, § 15).

4. SAME — LATERAL SEWERS — CONNECTION PERMITS — UNPLATTED LANDS.

Permits for connection with lateral sewers across city street from unplatted industrial properties of plaintiffs *held*, under ordinance provision pertinent to sewer connections with unplatted lands within city, permanent rather than temporary in nature and not revocable at will of city (Detroit Compiled Ordinances 1936, § 15).

5. SAME—SPECIAL ASSESSMENT DISTRICT FOR SEWERS—COURTS.

Where plaintiff owners of unplatted industrial city property to whom notice in accordance with charter had been given as to city's intention to construct a new sewage district and who saw the sewer being built yet made no timely protest nor appeared to contest the confirmation of the assessment roll, the action of the common council in determining plaintiffs on one side of street were benefited thereby and that residential owners of property on other side of street were not benefited thereby became final and plaintiffs may not complain to the courts for redress in the absence of fraud or bad faith (Detroit Charter, title 6, chap. 3, § 1).

Appeal from Wayne; Jayne (Ira W.), J. Submitted June 8, 1948. (Dockets Nos. 3–6, Calendar Nos. 43, 943–43, 946.)   Decided October 4, 1948.

Separate actions by Joseph H. Hack, doing business as J. H. Hack Manufacturing Company, Dunn Engineering Company, a Michigan Corporation, and Joseph DeMare and Steve DeMare, doing business as DeMare Brothers, against City of Detroit to recover special assessments paid under protest. Bill by Joseph H. Hack and others against City of Detroit and another to have assessment declared void. Cases consolidated. Judgments and decree for defendants. Plaintiffs appeal. Affirmed.

*Donald A. Wallace,* for plaintiffs.

*Raymond J. Kelly,* Corporation Counsel, and *Walter E. Vashak* and *Helen W. Miller,* Assistants Corporation Counsel, for defendants.

BUSHNELL, C. J. Plaintiffs Joseph H. Hack, doing business as J. H. Hack Manufacturing Company, Dunn Engineering Company, a Michigan corporation, Joseph DeMare and Steve DeMare, a copartnership, doing business as DeMare Brothers and Advance Stamping Company, a Michigan corporation, own unplatted parcels of land in the city of Detroit, lying south of Lyndon avenue and west of Livernois avenue, which are used by them for industrial purposes. These parcels were each served by lateral sewers which connect with a public sewer on the north side of Lyndon. This sewer through other laterals serves residential properties in a platted subdivision north of Lyndon. This sewer on the north side of Lyndon, which empties into a trunkline sewer on Livernois, was constructed by defendant city of Detroit in 1924 and paid for out of the general fund. The cost of the laterals north of Lyndon were assessed to the residential platted property which they serve.

In 1930, Hack's predecessor in title was given permission to drain his parcel into the sewer on the north side of Lyndon and paid therefor his proportionate part of the cost of a lateral connection. Later the Dunn and DeMare predecessors in title were given like permission, and also paid their share of the cost. Advance Stamping Company had already taken like action.

It is claimed in the city's brief that these special permits were issued pursuant to 1926 Compiled Ordinances, chap. 150, § 14, which reads as follows:

"Sec. 14. In case there is no alley in a block or square, and it be not possible to open one therein, or to have one opened within a reasonable period, and drainage is deemed necessary at once, the board of public works may grant permission to connect the lot with a contiguous public sewer on payment into the public sewer fund of a sum equivalent to 75 per cent. of the estimated cost of a lateral sewer assessment on such lot, and the further agreement of the lot owner to pay such lot's proportion of the assessment for a lateral sewer in the alley as soon as opened in said block, upon receiving return of the 75 per cent. paid into the public sewer fund as aforesaid and the attachment of his signature to a petition for the opening of said alley, and for the construction of a lateral sewer there as soon as opened."

This section was later replaced by the following in the 1936 compilation:

"In case there is no alley in block or square, and drainage is deemed necessary at once, the board of public works may grant permission to connect the lot with a contiguous public or lateral sewer on payment into the public sewer fund of a sum equivalent to the estimated cost of lateral sewer assessment on such lot. After the alley has been opened and a lateral sewer constructed therein, the owner shall then pay the proportional share of the regular sewer assessment, and the sum previously paid into the public sewer fund shall be refunded upon request of owner."

In 1940, as more of the industrial property south of Lyndon became occupied, lateral sewer permits were requested by others. Because of the increase in the number of properties requiring such service and reports of flooded basements in the area served by it the sewer on the north side of Lyndon was deemed inadequate to serve more of the area south of Lyndon. The common council therefore deter-

mined that a new east and west sewer on the south
side of Lyndon was necessary in order to adequately
serve the increased industrial development in the
unplatted area. A new sewer assessment district
was created by resolution, bids were received, and a
new sewer was constructed which was accepted by
the city on December 26, 1945.

Notices to property owners affected had previous-
ly been given and hearing dates set as required by
the city charter. No protests having been filed and
no affected property owners having appeared, the
assessment roll was confirmed on February 1, 1946.

The cost of the new sewer was assessed against
property lying in the new assessment area south of
Lyndon, and statements of the sewer tax were mailed
to property owners. During this entire period no
action was taken by any of the plaintiffs, but on June
25, 26, 27 and 28, 1948, they respectively filed peti-
tions with the common council for cancellations of
their new sewer assessment. These petitions, after
a public hearing thereon, were denied and refunds
of the amounts paid for their lateral connections to
the old sewer on the north side of Lyndon were di-
rected. Plaintiffs refused to accept these refunds.

Advance Stamping Company paid its first sewer
assessment without protest, while Hack, Dunn and
DeMare paid theirs under protest, and brought sepa-
rate suits for recovery.

All of the parties first mentioned herein joined as
plaintiffs in a chancery action seeking a decree va-
cating the entire assessment, enjoining the collection
of it, and the imposition of any other assessment, and
a refund of those assessments which had already
been paid.

The facts were stipulated at the pretrial hearing,
the causes were consolidated and, after trial, a de-
cree in the chancery action and judgments in the re-

spective law actions were entered in favor of the city.

A review *de novo* of the matter requires substantial concurrence with the findings of the trial judge, which are as follows:

"The permits for the temporary use by the plaintiffs of the lateral sewer across the street in no way foreclosed or estopped the city from constructing the sewer, the subject of this controversy. The plaintiffs claim that their properties already had adequate sewage facilities. That is a question to be determined by the municipal authorities and the court can only intervene excepting upon a showing of mistake or abuse of discretion amounting to fraud. There is no such showing here. The problem was studied by the city's engineers of ability and long experience. They determined this sewer a necessity to promote the public health of the community. The sewer was constructed in accordance with the law.

"Plaintiffs then contend that they should not be assessed for the new sewer, but that it should be paid for by the public at large, or at least shared by the property on the north side of Lyndon.

" 'Property owners on the street do not own and have no vested right to have the old sewer maintained.' *Kuick* v. *City of Grand Rapids,* 200 Mich. 582.

"The plaintiffs knew that they were being given permits for the temporary use of the sewer north of Lyndon. They were never assessed for its construction. They have been tendered any balances due them on these payments for temporary use. They have been assessed their proportionate share of the construction of the permanent sewer which they must now use. A court may intervene only on a showing of bad faith or such arbitrary and inequitable assessment as amounts to fraud. There is no such showing on this record. On the contrary, as we understand the stipulated facts, these plaintiffs have been offered a refund on all amounts paid for the

use of the old sewer on the north side of Lyndon which would amount to their having received free use of the same until the present sewer was constructed."

Appellants present six questions on appeal. Some of these pertain to the contention that plaintiffs' former lateral sewer connections were adequate for their needs and that the increased industrial development is all west of their properties, but the assessment district created makes no distinction between plaintiffs' properties which already had adequate sewer facilities and those having none, all being assessed alike.

If there was any discrimination, this charge is avoided by the ordinance requirement that moneys paid for temporary lateral connections be refunded upon request. This refund was directed and the city's tender of it was refused.

The temporary lateral connection permits under the ordinance provisions of section 14, heretofore quoted, by use of the term "lot" therein seem to be those concerned with platted rather than unplatted property.

Section 15 of the 1936 compiled ordinance, chapter 123, states how unplatted property may be served. It reads:

"No connection with the public sewer system of the city of Detroit shall be permitted to any property outside the city limits, nor to any unplatted property within the city limits, except on recommendation of the board of public works adopted by three-fourths vote of all of the aldermen-elect, and the payment into the public sewer fund, through the board of public works, as the latter board may deem just, after report of the city engineer."

The city admits that for more than 20 years it has been the practice to issue temporary permits with-

out the approval of a "three-fourths vote of all of the aldermen-elect."

Since a city may waive the ordinance requirements in this connection, defendant city is now estopped to object.

"But the municipality may waive requirement as to form of permit either expressly or by a course of conduct which indicates an intention to do so, or it may be estopped to object." 4 McQuillin on Municipal Corporations (2d Ed. Rev.), § 1566.

Hence, it must be held that the lateral permits issued were not temporary but permanent in nature, and may not be revoked at the will of the city.

Since section 14 contains only provisions for permits for laterals of a temporary nature in platted property alone, it must of necessity follow, therefore, that these permits on unplatted property were issued under the provisions of section 15 of the ordinances and, therefore, they are not temporary in nature. It also, therefore, follows that these permits may not be revoked merely at the will of the defendant, city of Detroit.

However, defendant maintains that under the authority of the charter of the city of Detroit, title 6, chap. 3, § 1, and *Warren* v. *City of Grand Haven,* 30 Mich. 24; *Brown* v. *City of Grand Rapids,* 83 Mich. 101, 109; *Powers* v. *City of Grand Rapids,* 98 Mich. 393, 396; *Nelson* v. *City of Saginaw,* 106 Mich. 659; *Brown* v. *City of Saginaw,* 107 Mich. 643; *Gates* v. *City of Grand Rapids,* 134 Mich. 96; *Altermatt* v. *Dillman,* 269 Mich. 177, that the question:

"Where objections to a sewer assessment involves matters of administrative or legislative discretion only, will the courts entertain such complaints and substitute their judgment for that of administrative or legislative branches of government?"

must be resolved in favor of the defendant by a negative answer.

The section of the charter of the city of Detroit above cited provides:

"Whenever the common council shall ascertain the cost and expense of   *   *   *   or the construction of lateral sewer or drain, it shall thereupon cause such portion thereof as it may deem just to be equitably assessed against the lots or parcels of real estate to be benefited thereby in proportion to the probable benefit to be derived therefrom."

The defendant city argues that, under this provision, the common council determined that the residential areas encompassed within the 1924 sewage district were in no way benefited by the new sewer construction, and that, on the other hand, the plaintiffs were benefited, and that, in the absence of fraudulent conduct amounting to a total abuse of discretion, the determination of the common council in this matter is final. This is especially true where, as in the instant case, plaintiffs were given due notice of the intention of the city to construct the sewer and assess their properties. Plaintiffs furthermore saw the sewer being constructed, and yet no timely protest was made; nor did any of them appear to contest the confirmation of the assessment roll.

In *Brown* v. *City of Grand Rapids, supra,* it is said:

"He did not appear, and does not pretend that he made any effort to have the assessment corrected before the council. The determination of these two bodies, the commissioners who made the assessment roll, and the common council of the city of Grand Rapids, cannot now be inquired into, unless it appears that they acted in bad faith. It is not for this Court to set its judgment up in opposition to that of the board of commissioners and the council, and to say that this parcel of land or that is assessed too

much or too little. The assessments were to be made according to benefits to each parcel of property, and there is nothing in the record showing that the commissioners did not assess the complainant's lands in accordance with their best judgments. Where provision is made by law for a review of assessment proceedings, and a body appointed with the power to set the assessment aside or correct the error complained of, and the party wholly fails to appear before such body, or take any steps to have such correction made, he is not in a position to appeal to the courts for redress in the absence of fraud or bad faith. *Williams* v. *City of Saginaw,* 51 Mich. 120; *Comstock* v. *City of Grand Rapids,* 54 Mich. 641; *Peninsula Iron & Lumber Co.* v. *Crystal Falls,* 60 Mich. 510."

Because of the authorities above cited and the language just quoted it must necessarily follow that the trial court was not in error in rendering judgments for no cause of action in the three law cases and in dismissing plaintiffs' bill in the chancery cause.

The judgments and decree of the lower court are affirmed, with costs to defendant.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.