EDWARD ROSE SALES CO. *v.* KALAMAZOO TOWNSHIP

1. Municipal Corporations—Assessments—Retroactive Assessment—Burden of Proof.

A plaintiff who attacks an assessment, which has been assessed against it retroactively, must show, even though the retroactive application is questionable, that the assessment is arbitrary or unreasonable.

─────────────────────────

References for Points in Headnotes

[1] 51 Am Jur, Taxation §§ 109, 110, 122, 123, 306.

[2–4] 25 Am Jur 2d, Drains and Drainage Districts §§ 39, 51, 52, 55, 56.

[5] 25 Am Jur 2d, Drains and Drainage Districts §§ 52, 56.

2. MUNICIPAL CORPORATIONS—SEWER SYSTEM—ASSESSMENT—RETRO-
ACTIVE ASSESSMENT—BURDEN OF PROOF.

Application by defendant township of its 1967 sewer rate sched-
ule to plaintiff landowner, who had connected to the sewer in
1966, was not improper where plaintiff, although claiming to be
willing to pay a proper connection fee, never offered an alter-
native method of computation, never attacked the reasonable-
ness of the 1967 rate schedule, and failed to show that the
amount he was required to pay was unreasonable or arbitrary
when compared with what he ordinarily would have paid in
1966.

3. MUNICIPAL CORPORATIONS—SEWER SYSTEM ASSESSMENT—RETRO-
ACTIVE ASSESSMENT.

A township could charge plaintiff landowner a "facility unit
charge" for sewer service of $3.75 per apartment per quarter
even though the $3.75 rate was not adopted until after the
period for which the plaintiff was billed where, during the
period for which the charge was levied, the township had in
effect an ordinance authorizing a "facility unit charge" ex-
pressed in a formula, which was later determined to equal
the $3.75 rate.

4. MUNICIPAL CORPORATIONS—SEWER SYSTEM ASSESSMENT—PROPRI-
ETY—BURDEN OF PROOF.

Township's charging plaintiff landowner a sewer connection fee
was properly upheld where the township's proofs tended to
establish that the rate, a close approximation to the rate ap-
plicable to a sewer special assessment district was in accord-
ance with the township's ordinance and the plaintiff offered
no evidence to the contrary, because the plaintiff bore the
burden of proof.

5. JUDGMENT—INADVERTENT ERROR—APPEAL AND ERROR—CORRECTION
OF ERROR.

The appellate court exercised its power to correct a judgment
where the trial court inadvertently awarded defendant town-
ship a greater amount for sewer connection charges than it
had requested.

Appeal from Kalamazoo, Lucien F. Sweet, J. Sub-
mitted Division 3 February 3, 1971, at Grand Rapids.
(Docket No. 9030.) Decided May 18, 1971.

Complaint by Edward Rose Sales Co. against Kalamazoo Township to determine amount owed defendant for sewer connection and to compel resumption of sewer service pending determination. Defendant counterclaimed for sewer charges. Services ordered restored. Judgment for defendant. Plaintiff appeals. Affirmed.

*Stapleton, Adams, Burgie, Kidston & Crocker* (by *Charles E. Ritter*), for plaintiff.

*Bauckham, Reed & Lang,* for defendant.

Before: Fitzgerald, P. J., and V. J. Brennan and T. M. Burns, JJ.

T. M. Burns, J. Plaintiff Edward Rose Sales Co. appeals from the judgment of the trial court, sitting without a jury, awarding Kalamazoo Township $8,787.48 plus interest as the cost of connecting plaintiff's Whitehall Apartment property to the township's Kendall Avenue sewer.

On January 10, 1966, the township adopted Ordinance No 122 for the purpose of regulating and controlling the construction of public sewers within the township and private service connections thereto, which provides in relevant part:

"[2c] (2)  *  *  *  The amount of the connection charge shall be in the discretion of the township board but shall approximate the amount a connector would have paid on a benefit assessment basis, had his property been included in a sewer special assessment district created for the purpose of financing the project."

On September 25, 1965, plaintiff purchased land in the township with 454.65 frontage feet. Plaintiff

Rose Sales placed $3,200 in escrow at this time to guarantee sufficient funds for payment of sewer connection fees when due. Construction of Whitehall Apartments, a 128-unit complex, was thereafter begun. On June 30, 1966, Rose Sales contracted with Peters Construction Co. for connection of the Whitehall Apartments to the Kendall Avenue sewer. The connection was completed in the fall of 1966. No bill was presented by the township for exercise of Rose Sales' right to connect.

On July 24, 1967, a rate schedule was finally adopted by the township. It provided in part:

"1. Where there has been no previous cost or expense for the sewer to the owners of property to be connected, a charge of $10.75 per front foot of property connected will be collected. Where the property is a corner, up to 150 feet of the longest side of the property shall be exempt from such charge.

"2. An additional charge of $1,000 shall be paid to the township by a connector to an existing sewer main for each service lead between the sewer main and the property line for the first 12 living units connected. A further charge of $25 shall be paid to the township for each additional living unit connected to the service lead in excess of 12."

The $10.75 figure was based on an averaging of the costs for construction of the entire project. Rather than assess a property owner the cost of construction directly allocable to his property, each property owner shared the cost *pro rata* according to his footage since the benefit of the project was mutual. Paragraph 2 equalizes the single-unit owner with the multiple-unit owner on the presumption that the latter would receive a greater benefit from, and contribute a greater density to, the system.

Pursuant to the rate schedule established, the township on June 6, 1968, billed Rose as follows:

| | | |
|---|---|---|
| 454.65 feet at $10.75 per foot | | $4,887.48 |
| Facility Unit Charge: | | |
| Units 1–12 | $1,000 | |
| Units 13–128 | 2,900 | |
| ($25 each) | | 3,900 |
| | | $8,787.48 |

Correspondence between the parties ensued, but when no agreement for payment was reached, the township terminated service on August 1, 1968. Rose immediately instituted the present action to determine the amount it owed for the connection and to compel resumption of service pending such determination. The trial court ordered reconnection and restrained the township from interfering with service to Whitehall Apartments during pendency of the action. The township filed a counterclaim seeking sewer connection charges of $8,787.48.

Trial was held on June 24, 1969. In a decision on December 11, 1969, the trial judge determined that Rose must pay the money claimed by the township in the counterclaim except the cost of disconnection and reconnection which the township waived during the trial. Rose filed a claim of appeal from the decision on February 14, 1970. Defendant raises the following issues:

1. Whether a township may assess sewer system charges under a rate schedule not in existence at the time private dwellings were connected to the system.

2. Whether a township may charge a "Facility Unit Charge" for service received prior to the effective date of the rate schedule.

3. Whether a township may charge a connection fee exceeding what would have been paid if the property had been included in a special assessment

district, if this is the maximum charge permitted under the township's ordinance.

4. Whether the trial court erred in entering a judgment for an amount greater than that claimed by the counterclaimant.

1. *Whether a township may assess sewer system charges under a rate schedule not in existence at the time private dwellings were connected to the system?*

Plaintiff contends that it was improper to apply the 1967 rate schedule to it, because it had connected to the sewer in 1966. Plaintiff contends that the method imposed accords a retroactive effect to the municipal enactment.

Plaintiff claims to be willing to pay a proper fee, but never offered an alternative method of computation nor attacked the reasonableness of the rate schedule established by the township. However, the burden is upon plaintiff to demonstrate that the action taken by the township is arbitrary or unreasonable:

"Assuming, what is questionable, that plaintiffs have the right, in this proceeding, to contest the amount of the assessment, they must at least point out either that the method of assessment adopted was all wrong or that, applying a proper method, a wrong result is apparent." *Kuick* v. *City of Grand Rapids* (1918), 200 Mich 582, 590.

While the application of a 1967 rate schedule to a landowner who has been connected to the sewer since 1966 might be unreasonable, it must be shown, as part of the plaintiff's burden, that the amount he is required to pay is unreasonable when compared with what he ordinarily would have paid in 1966. Plaintiff has failed to demonstrate in any way how the 1967 rate schedule is arbitrary or unreasonable as applied to it. We, therefore, find plaintiff's first issue to be without merit.

2. *Whether a township may charge a "facility unit charge" for service received prior to the effective date of the rate schedule?*

Rose claimed a $935 credit for monies paid under protest pursuant to a "facility unit charge". The trial court's opinion lacks any finding with regard to this claim. The township asks this Court to infer from this omission the trial court's rejection of the claim.

Kalamazoo Township and the City of Kalamazoo concluded an agreement on February 22, 1965, where the city would provide sewage treatment service for the township. Paragraph 5 of that agreement provided a method of compensation for the city:

"A. Service Charge: The proceeds of a charge to township customers based on water consumption and water meter size which shall be billed and collected by the city and which shall be equal to 150% of a similar charge from time to time and made by the city to its own customers within the city.

"B. Non-Industrial Facility Charge. A facility charge against non-industrial property to be paid by the township to the city, equal to $3.75 per quarter for each 'facility unit' as hereinbefore defined which is connected to a township sanitary sewer and which discharges its flow either directly or indirectly into the city sewage disposal system."

Paragraph 3 (a) of Ordinance No 122, adopted January 10, 1966, incorporated this service charge into the township's sewage plan:

"All those properties connected into a public sewer system shall be subject to the payment of sewer rates and charges as shall be determined by the township board, which shall, in no event, be less than 150% of similar rates charged within the City of Kalamazoo, as set forth in the sewer agreement negoti-

ated between the City of Kalamazoo and the township."

The city-township agreement also provided in Paragraph 5 (b) for a non-industrial facility charge of $3.75 per quarter per unit, *i.e.* per apartment. The 1966 township ordinance omitted this specific language, but in 1967 it was restated:

"Service Charge. Quarterly service charge will be billed to each customer by the City of Kalamazoo in connection with the customer's water bill in accordance with the agreement of February 22, 1965, between the Township of Kalamazoo and the City of Kalamazoo.   Service charges will be billed quarterly at the rate of $3.75 per living unit ($1.25 per month), plus $.12 per 100 cubic feet of water (fluid volume) shown on the 'winter quarter' water bill of the customer.   These rates are effective as of this date."

Rose was then billed under the 1967 rate schedule for service from September 19, 1966. It does not dispute the $.12 per 100 cubic feet of water charge, either prospectively or retrospectively, as this is apparently a translation of the 150% figure of the original ordinance. Rose makes no objection to the $3.75 per living unit per quarter charge, after July 24, 1967. However, it does find objectionable such a payment prior to July 24, 1967, since the township rate schedule until that time only described the 150% charge. The question was clearly framed for the trial court:

"*The Court*: You are talking about a $3.75 charge?
"*Mr. Kidston*: A quarterly charge which would have been billed from September 19, 1966, through the date these rates were adopted which was July 24, 1967.  *  *  * We are willing to stipulate that the rate was in effect. As far as the franchise agreement, it was this, $3.75. It is right in the franchise agree-

ment.  The Court can read it and determine the legal effect.  We simply say under their schedule it should have been collected only from and after July 24, 1967."

Rose asks this Court at least to remand the question to the trial court for findings, pursuant to GCR 1963, 517.1. *Insurance Company of North America* v. *Iroff* (1967), 9 Mich App 151, 156; *Titchenal* v. *Jackson & Church Co.* (1965), 375 Mich 281. Since this is an equity action, however, and appellate courts hear equity matters *de novo* on appeal, this Court may alter the lower court judgment and resolve the issue. *Wortelboer* v. *Wortelboer* (1969), 16 Mich App 629; *Biske* v. *City of Troy* (1969), 381 Mich 611; *Hustina* v. *Grand Trunk W. R. Co.* (1942), 303 Mich 581.

It appears to this Court that the rate schedule of July 24, 1967, is a restatement in its entirety of the 150% formula, and consequently no problems of retroactivity exist. The 1966 ordinance provided for charges at a rate 150% of that charged customers of the City of Kalamazoo, as set forth in the sewer agreement. Although only Paragraph 5 (a) of the city-township agreement has parallel 150% language, Paragraph 5 (b)'s $3.75 is the equivalent of 150% of the 1.3 mills charged city customers. This becomes clear upon a further reading of Paragraph 5:

"If the city should change its present practice of raising a part of the revenues for the operation of its sewage disposal system by changing the annual budgeted appropriation therefor so that the same is no longer substantially equal within 10% to the aforesaid 1.3 mills, then the facility charges set forth in subdivision B and C above shall be changed proportionately or eliminated entirely as the case may be."

It is thus clear that the 150% charge was two-fold. The City of Kalamazoo charges first on the basis of water consumption and secondly on the basis of living units. The township carried over the double charge in its 1966 ordinance by setting its charge at no less than 150% of city rates. The $935 accumulated from September 19, 1966, were thus properly chargeable to Rose.

3. *Whether a township may charge a connection fee exceeding what would have been paid if the property had been included in a special assessment district, if this is the maximum charge permitted under the township's ordinance?*

As an alternative to the cash deposit method of payment described under Paragraph 2 (c) of the 1966 ordinance, an applicant for service could institute special assessment proceedings under PA 1954, No 188, MCLA § 141.261 *et seq.* (Stat Ann 1969 Rev. § 5.2770 [1] *et seq*). If, however, the applicant elects the cash method:

"The amount of the connection charge shall be in the discretion of the Township Board, but shall approximate the amount a connector would have paid on a benefit assessment basis, had his property been included in a sewer special assessment district created for the purpose of financing the project." Ordinance No 122, Paragraph 2 (c) (2).

The township introduced numerous proofs that tend to establish that the rate actually charged was in close approximation to the rate applicable to a sewer special assessment district. To counter these proofs, plaintiff offered no evidence which would tend to establish that the charge did not approximate what the charge would have been under special assessment proceedings. Since the burden was on

the plaintiff,[1] we cannot say that the trial court erred in refusing to conclude that the charge was not in accordance with the ordinance. We find no error in the trial court's decision upholding the connection fee charge by the township.

4. *Whether the trial court erred in entering a judgment for an amount greater than that claimed by the counterclaimant?*

Plaintiff finally contends that the trial court erred in awarding the township a total of $8,787.48. Although the township had originally claimed that amount, in its counterclaim, at trial it requested a reduction:

*"Mr. Bauckham [for defendant]:*  *  *  *  As a result of Mr. Snell's testimony yesterday, we would also like to amend our claim for damages or costs, expenses here, and reduce it by $150 so that our claim would be $8,637.48 plus the 5% from August 1, [1968]."*

The township has expressed its willingness to concede this point. We will, therefore, modify the judgment to correct this inadvertent error.

The decision of the trial court is affirmed. The amount of the judgment is reduced pursuant to GCR 1963, 820.1 to $8,637.48, plus 5% interest from August 1, 1968, to rectify the error in awarding the township more than it claimed.

No costs, it being a public question.

All concurred.

---

[1] *Kuick v. City of Grand Rapids* (1918), 200 Mich 582.