## CARMICHAEL *v.* VILLAGE OF BEVERLY HILLS

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—PRESUMPTIONS
—GOOD FAITH—LAWFULNESS.

   A special assessment by a governmental unit stands upon the
   presumption of good faith, lawful action, and considerate
   creation of the assessment district; however, the presumption
   cannot withstand established facts to the contrary.

2. WITNESSES—TRIER OF FACT.

   The function of the trier of the facts is to test the accuracy or
   soundness of the opinions of the witnesses.

3. EVIDENCE—OPINION TESTIMONY—POSITIVE TESTIMONY—WEIGHT.

   Opinion testimony based on assumption rather than on facts es-
   tablished by proof may not be given the effect of outweighing
   positive testimony.

4. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW.

   A case dealing with equitable relief is heard *de novo* by an
   appellate court.

5. APPEAL AND ERROR—EQUITY—SCOPE OF REVIEW—TRIAL COURT'S
CONCLUSION.

   An appellate court when reviewing a case *de novo* can be aided
   by the conclusion or the facts drawn by the trial court, but
   is not controlled by them; the appellate court is not bound
   by the clearly erroneous standard.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Special or Local Assessments § 249.
[2] 53 Am Jur 2d, Trial § 156 *et seq.*
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 181.
[4] 5 Am Jur 2d, Appeal and Error § 822.
[5] 5 Am Jur 2d, Appeal and Error § 703.
[6] 48 Am Jur, Special or Local Assessments § 62 *et seq.*
[7–9] 48 Am Jur, Special or Local Assessments § 67 *et seq.*

6. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—REQUIREMENT
   —RATIONALE.

   A certain piece of property that is sought to be specially assessed
   must, as a general rule, receive some special benefit from
   the project that necessitated the special assessment, because
   the property owner should pay an extra amount for the extra
   benefit conferred or, in the alternative, because the whole com-
   munity should not have to pay for a project or improvement
   that benefits only certain properties.

7. MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENT — STREET IM-
   PROVEMENT — FRONT-FOOT BASIS — END OF ROAD TEST.

   Having all lots on a street being improved pay for the improve-
   ment on a front-foot basis is more practical than having them
   pay in accordance with the distance they are from the end
   of the street, because unscientific and subjective criteria could
   creep into any assessment procedure seeking to establish which
   lots received more benefits than other lots and because "a dis-
   tance from the end of the road" test places an unequal burden
   on some of the property owners.

8. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—STREET IM-
   PROVEMENT—BENEFIT—END OF ROAD TEST.

   The benefits conferred by the initial paving of a street are less
   dirt, mud, and noise in front of an owner's property, not
   benefits from pavement down the street; thus, basing the
   amount of the property owner's special assessment for street
   pavement on the distance the owner's property is from the
   end of the street on the theory that the further down the street,
   the more the owner benefits from the improvement because of
   the longer distance he travels is error; the front-foot basis
   must be used.

9. MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENT — STREET IM-
   PROVEMENT — FRONT-FOOT BASIS.

   The front-foot basis of assessment for street improvement has
   repeatedly been approved.

Appeal from Oakland, Arthur E. Moore, J.  Sub-
mitted Division 2 November 5, 1970, at Lansing.
(Docket No. 8246.)  Decided January 26, 1971.

Complaint by John G. Carmichael and others
against Village of Beverly Hills and others to en-

join the collection of a special assessment for street improvement. Judgment for plaintiffs in part and for defendants in part. Defendants appeal, and plaintiffs cross-appeal. Reversed and the original assessment reinstated.

*Vernon M. Fitch,* for plaintiffs.

*Bond, Dillon & Lang,* for defendants.

Before: Bronson, P. J., and Fitzgerald and Churchill,* JJ.

Per Curiam. On February 17, 1969, the Village of Beverly Hills enacted a resolution adopting a special-assessment paving project that included property abutting Hampton Drive and Hampstead Drive in the Berkshire Grove subdivision of that village. The special assessment was levied to pay for the cost of paving the streets.

On April 15, 1969, plaintiffs filed a suit to enjoin the collection of the special assessment, claiming no benefit and further asking for damages. After three days of non-jury trial, a judgment was filed on October 1, 1969. The judgment declared that certain of the specially-assessed lots were not benefited and thus could not be assessed, that certain other lots were benefited but not to the amount assessed and should therefore be reassessed, and that the special assessments of the remaining lots were to stand. No proofs on damages were offered and accordingly damages were denied.

The court based the distinctions, apparently, on testimony by one of the expert witnesses of defend-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ants who testified on cross-examination that the benefit a certain lot received would depend on how far it was from the main road. The farther it was from the main road the longer a person would travel from it on the new pavement, thus it would get a greater benefit.

This decision by the lower court evidently satisfied neither of the parties. On October 13, 1969, the defendants filed a claim of appeal. Plaintiffs have also cross-appealed. Defendants appellants contend basically that the special assessment on a frontage-foot basis should stand. Plaintiffs appellees contend that none of the lots should be specially assessed because none of them specially benefited from the paving, and if there is a benefit it is outweighed by additional detriments.

When a governmental unit makes a special assessment, it stands upon the presumption of good faith, lawful action, and considerate creation of the assessment district, although such presumption cannot withstand established facts to the contrary. *Dix-Ferndale Taxpayers' Ass'n* v. *City of Detroit* (1932), 258 Mich 390.

The function of the trier of the facts is to test the accuracy or soundness of the opinions of the witnesses. *Foren* v. *Royal Oak* (1955), 342 Mich 451. And the guide to be used by the trier is that opinion testimony based on assumption rather than on facts established by proof may not be given the effect of outweighing positive testimony. *Wyatt* v. *Chosay* (1951), 330 Mich 661.

On appeal, if the case is one involving equitable relief, it is heard *de novo* by the appellate court. *Brill* v. *City of Grand Rapids* (1970), 383 Mich 216; *Knott* v. *City of Flint* (1961), 363 Mich 483; *Fluckey* v. *City of Plymouth* (1960), 358 Mich 447; *Foren* v. *City of Royal Oak, supra.* In such cases the

appellate court can be aided by the conclusion or the facts drawn by the trial court, but is not controlled thereby. *Hawthorne* v. *Dunn* (1920), 210 Mich 176; *Foren, supra.* It would appear, then, that this Court is not bound to the clearly erroneous standard of GCR 1963, 517.1, in reviewing the decision of the lower court here.

Generally, in order for a certain piece of property to be specially assessed, it must receive some special benefit from the project that necessitated the special assessment. *Fluckey* v. *City of Plymouth, supra.* The rationale is that the property should pay an extra amount for the extra benefit conferred. Or, in the alternative, the whole community should not have to pay for a project or improvement that benefits only certain properties.

In *Foren* v. *Royal Oak* (1955), 342 Mich 451, the Court reversed the judgment of the lower court that enjoined the city from collecting a special assessment for purposes of initially paving a street. The Court held that the initial paving of an unpaved street was a benefit to the abutting owners.

The Court went on to say that the measure of special benefits is not solely that of the enhanced values, citing *Oakland County Drain Commissioner* v. *City of Royal Oak* (1949), 325 Mich 298. The Court also affirmed the assessment on a frontage foot basis of all abutting owners as an equitable distribution of the burden, relying on *Auditor General* v. *Konwinski* (1928), 244 Mich 384.

In *Brill* v. *City of Grand Rapids, supra,* the Supreme Court held that the widening of an *already paved* country road into a four lane highway to permit much heavier traffic was not a benefit to the abutting owner. In *Brill, supra,* however, the Court reaffirmed their statement in *Fluckey* v. *City of Plymouth, supra,* that there is a difference between

widening an already paved street and initially pav-
ing a gravel road. The Court said that in the
latter case it was probably safe to say that a benefit
occurred to the abutting owners.

Both Hampton Drive and Hampstead Drive run
east and west. On their western edge, they con-
nect with Lahser Road, which runs north and south.
On the eastern side, Hampton and Hampstead run
in an easterly direction and then Hampton curves
to the south and Hampstead curves to the north,
thus forming a "U" shape. At the point where the
two meet, it becomes a single road, Hampton Drive,
which again continues in an easterly direction.

In the instant case, the trial judge found that,
depending on the distance from the main road,
some of the properties were benefited and their
assessments should stand; that other properties
were benefited, but not to the same extent as the
first group and they therefore should be reassessed,
and that some properties received no benefit and
thus should not be assessed at all.

The question really becomes one of whether or
not this Court deems it necessary to substitute its
judgment on the record for that of the lower court.
The problem, however, in affirming the lower court
in this case is that it would establish precedent
for a basis for assessment that is not only difficult
to measure, but lends itself to conjecture. It is
more practical to have all the lots on an improved
street pay for the improvement on a front-footage
basis rather than having the lots pay in accordance
with the distance they are from the end of the road.

Indeed, to establish this type of assessment would
be harsh on the property owners that are furthest
from the main road. Unscientific and subjective
criteria could creep into any assessment procedure
seeking to establish which lots received more benefit

than others. Such a sliding-benefit scale becomes difficult to use and arbitrary in its effect.

Additionally, a basis for special assessment such as the one set down by the trial court runs into uniformity problems because every valid assessment must be based on some legally-ordained basis of apportionment, and not arbitrarily. *Auditor General* v. *Konwinski* (1928), 244 Mich 384. An assessment on a frontage-foot basis has been heretofore legally sanctioned. *Konwinski, supra; Foren, supra.* A "distance from the end of the road" places an unequal burden on some property owners. The trial court supports this position on the ground that the benefit conferred on a certain piece of property is determined by how far the owner gets to travel on the new pavement.

Such a position misjudges the benefits conferred. The benefits conferred by initial paving really are less dirt, noise, mud, *etc.,* which results from the new pavement *in front* of an owner's property, not from pavement down the street. Indeed, if the benefit theory applied below were carried to its logical conclusion, the owners at the far end of the street would, in effect, not only be paying for the pavement in front of their own property, but also for the pavement in front of other owners' property.

In view of the fact that the "front foot" basis of assessment has been repeatedly upheld in our courts, and the attendant problems of condoning and promulgating a new basis, we decline to approve the decision of the lower court.

Reversed and the original assessment reinstated. No costs, a public question.