*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EVANGELOS GIANAKOS,

Petitioner-Appellee,

v

INDEPENDENCE TOWNSHIP,

Respondent-Appellant.

UNPUBLISHED
October 19, 2023

No. 363619
Tax Tribunal
LC No. 21-003819

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

Respondent Independence Township appeals as of right the final opinion and judgment of the Michigan Tax Tribunal Small Claims Division finding that the special assessment levied against petitioner's property for snow removal was "void." For the reasons set forth in this opinion, we reverse the Tax Tribunal's ruling and remand this matter for further proceedings.

## I. BACKGROUND

In 2021, the Township established the Thendara Special Assessment District 1 for Winter Road Maintenance and levied a special assessment intended to defray the cost of hiring a contractor to perform regular and extraordinary winter road maintenance within the district. Petitioner's property was included in the special assessment district.

On November 4, 2021, petitioner filed a petition with the Tax Tribunal to appeal the special assessment. Petitioner claimed that the special assessment was not necessary for his property and did not benefit his property. Specifically, petitioner argued that it was not necessary to levy a special assessment for snow plow service of the street adjacent to petitioner's property because that street was plowed and maintained by the Oakland County Road Commission. Petitioner also argued that there was no benefit to petitioner's property because the maintenance funded by the special assessment district did not measurably increase the value of petitioner's property. Petitioner included the following two paragraphs of argument, which aptly summarize the nature of his dispute with the special assessment:

We should not be forced to pay a special assessment on a county road maintained by the County. The Township resolution is demanding regular and extraordinary winter road maintenance of certain Thendara subdivision roads that benefits properties other than ours. The benefits provided by the SAD [special assessment district] do nothing to enhance our property value because the County maintains the road.

. . . The necessity is really a conveni[e]nce to someone else['\]s property, to get the road plowed early!! Before the county can get to it. This is redundant and forces us to pay for it twice. Once with our taxes and once again with this special assessment.

Petitioner, who represented himself in the tax tribunal, attached pictures and documents to his petition as evidence to support his claim, but he did not include much explanation connecting his evidence to his claim that the special assessment was not necessary or beneficial for his property. Nonetheless, it is possible to glean the gist of petitioner's theory from the record evidence.

Petitioner's house is in the Sunny Beach Subdivision and is located on the corner of Woodlawn Avenue and Algonquin Boulevard, with a Woodlawn Avenue address. Woodlawn Avenue is a private road in the Sunny Beach Subdivision. The Thendara Park Subdivision and the Sunny Beach Subdivision adjoin each other along a common boundary line. Algonquin Boulevard runs east-west, and it enters the Thendara Park Subdivision a short distance west of petitioner's house and continues through part of the Thendara Park Subdivision. It appears that Algonquin Boulevard, including the section running along petitioner's property, is one of the roads included in the snow plow maintenance funded by the special assessment, while Woodlawn Avenue is not one of the included roads.

Petitioner's attachments to the petition included the following undated email from the Oakland County Road Commission's Assistant General Counsel, which provides some clarity about the winter maintenance of Algonquin Boulevard:

Good Morning [petitioner]:

As stated in our telephone conversation, Algonquin Blvd. (from Michigamme to Eston) is a public road under the RCOC's [Road Commission for Oakland County] jurisdiction. The RCOC maintains the road according to our Winter Maintenance Guidelines. However, since a private contractor also maintains the road, the road is usually plowed and salted before the RCOC trucks get to it. If the road was not maintained by a private contractor, then we would still maintain the road according to our Winter Maintenance Guidelines. As this is a sub-local road, it is not a priority and we would not perform winter maintenance on the road until all primary and state trunk-line roads were completed.

The township submitted an appraisal demonstrating that petitioner's property value was approximately $60,000 higher with the winter road maintenance special assessment than without the special assessment. The township also submitted pictures of petitioner's property

demonstrating that the driveway for his house was on Algonquin Boulevard. The township argued that petitioner had not met his burden of establishing that there was a substantial or unreasonable disproportionality between the amount assessed and the value that accrued to the subject property as a result of the assessment and that petitioner therefore had not shown that the special assessment was invalid.

Following a hearing, the Tax Tribunal issued a written final opinion and judgment finding that the special assessment levied against petitioner's property could not be collected because it was "void." The Tax Tribunal stated that the "legal issue in this matter is whether the benefit from the special assessment is proportional to the cost of the improvement." However, the tribunal failed to address this legal issue. Instead, the Tax Tribunal found that Algonquin Boulevard and the roads in the Thendara Park Subdivision were public roads maintained by the Oakland County Road Commission and that the special assessment was "void" because the Township did not get prior written approval from the Oakland County Board of Road Commissioners for the winter maintenance of those roads as "required" by MCL 41.722(2). The tribunal noted that the Township imposed the special assessment pursuant to MCL 41.721, *et seq.*, and that MCL 41.721 authorized township boards to make certain improvements and to defray the costs of those improvements through special assessments levied against the benefitted property. The tribunal then quoted MCL 41.722(2), which provides in relevant part that a "road under the jurisdiction of . . . the board of county road commissioners shall not be improved under this act without the written approval of . . . the board of county road commissioners." Relying on a dictionary, the Tax Tribunal defined "improvement" as an enhancement of value or excellence. The Tax Tribunal concluded by explaining its reasoning as follows:

> Applying the plain language of the statute, it is clear that Respondent was required to get written approval from the Oakland Board of County Road Commissioners before Respondent's board could establish the Thendara - District 1 Public Road Special Assessment for Winter Road Maintenance, and there is no evidence before the Tribunal that Respondent did so. Therefore, the Tribunal finds that the special assessment levied against Petitioner's property is void.

The Township's motion for reconsideration was denied. This appeal followed.

## II. STANDARD OF REVIEW

"In the absence of fraud, this Court's review of a decision of the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle." *Blaser v East Bay Twp*, 242 Mich App 249, 252; 617 NW2d 742 (2000). "The tribunal's factual findings are upheld unless they are not supported by competent, material, and substantial evidence." *Menard, Inc v City of Escanaba*, 315 Mich App 512, 520; 891 NW2d 1 (2016) (quotation marks and citation omitted). Questions of law, including issues of statutory interpretation, are reviewed de novo. *Blaser*, 242 Mich App at 252; *Michigan's Adventure, Inc v Dalton Twp*, 287 Mich App 151, 153; 782 NW2d 806 (2010).

## III. ANALYSIS

"A special assessment is a pecuniary exaction[ ] made by the government for a special purpose or local improvement, apportioned according to the benefits received." *Ashley Ann Arbor, LLC v Pittsfield Charter Twp*, 299 Mich App 138, 148; 829 NW2d 299 (2012) (quotation marks and citation omitted; alteration in original). "Although it resembles a tax, a special assessment is not a tax." *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 323; 683 NW2d 148 (2004) (quotation marks and citation omitted). "A special assessment is a levy upon property within a specified district. . . . [and] [i]n contrast to a tax, a special assessment is imposed to defray the costs of specific local improvements, rather than to raise revenue for general governmental purposes." *Michigan's Adventure*, 287 Mich App at 155 (quotation marks and citation omitted). Special assessments "are sustained upon the theory that the value of the property in the special assessment district is enhanced by the improvement for which the assessment is made." *Kadzban v City of Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993) (quotation marks and citations omitted).

"For a special assessment to be valid, 'there must be some proportionality between the amount of the special assessment and the benefits derived therefrom.' " *Kadzban*, 442 Mich at 501-502, quoting *Dixon Rd*, 426 Mich at 401. "[S]pecial assessments are presumed to be valid," and a plaintiff challenging a special assessment must at least "present credible evidence to rebut the presumption [of validity]." *Kadzban*, 442 Mich at 505. "Without such evidence, a tax tribunal has no basis to strike down special assessments." *Id*.; accord *Storm v City of Wyoming*, 208 Mich App 45, 46; 526 NW2d 605 (1994). Once the plaintiff presents "evidence effectively rebutting the presumption of validity," the burden shifts to the governmental entity, which must prove that "the assessments are reasonably proportionate in order to sustain the assessments." *Kadzban*, 442 Mich at 505 n 5.

Here, the Tax Tribunal concluded that the special assessment was "void" because there was no evidence that the Township obtained prior written approval from the Oakland County Board of Road Commissioners for the winter maintenance as "required" by MCL 41.722(2).

MCL 41.721 provides:

> The township board has the power to make an improvement named in this act, to provide for the payment of an improvement by the issuance of bonds as provided in section 15, and to determine that the whole or any part of the cost of an improvement shall be defrayed by special assessments against the property especially benefited by the improvement. The cost of engineering services and all expenses incident to the proceedings for the making and financing of the improvement shall be deemed to be a part of the cost of the improvement.

Accordingly, the act "grants townships the authority to make improvements and to establish special assessment districts to pay for the improvements:" *Blaser*, 242 Mich App at 252.

Furthermore, MCL 41.722 provides in relevant part as follows:

> (1) The following improvements may be made under this act:

> * * *

-4-

(c) The construction, improvement, and maintenance of public roads.

\* \* \*

(2) A road under the jurisdiction of either the state transportation department or the board of county road commissioners shall not be improved under this act without the written approval of the state transportation department or the board of county road commissioners. As a condition to the granting of approval, the state transportation department or the board of county road commissioners may require 1 or more of the following:

(a) That all engineering with respect to the improvement be performed by the state transportation department or the board of county road commissioners.

(b) That all construction, including the awarding of contracts for construction, in connection with the improvement be pursuant to the specifications of the state transportation department or the board of county road commissioners.

(c) That the cost of the engineering and supervision be paid to the state transportation department or the board of county road commissioners from the funds of the special assessment district.

Here, petitioner did not present any evidence that the Township did not have written approval from the county board of road commissioners pursuant to MCL 41.722(2). Without such evidence, the Tax Tribunal erred as a matter of law by ignoring the application of the presumption of validity and instead invalidating the special assessment on the ground that the Township did not produce evidence that it had obtained the necessary written approval. *Kadzban*, 442 Mich at 505 (stating that without evidence from the petitioner rebutting the presumption of validity, "a tax tribunal has no basis to strike down special assessments"); *Storm*, 208 Mich App at 46-47 ("If a petitioner fails to meet the burden of proving the special assessments invalid, the tax tribunal may not make a determination de novo of the benefit and substitute its judgment for that of the municipality.").

Moreover, there is no language in MCL 41.722(2) requiring that proof of the requisite written approval must be submitted to the Tax Tribunal in order to sustain a special assessment against a challenge by an assessed property owner. "The primary goal of judicial interpretation of statutes is to discern and give effect to the intent of the Legislature," and "[i]t is a fundamental principle that a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Niles Twp*, 261 Mich App at 313.

It is worth noting that the act provides procedures authorizing a township to complete certain improvements and maintenance, as well as funding those activities through mechanisms such as special assessments. See *Blaser*, 242 Mich App at 252; MCL 41.721. The plain language of MCL 41.722(2) requires a township to obtain written approval before making certain improvements, but there is no language in the statute indicating that such written approval is a precondition for establishing a special assessment district or that a special assessment district must be invalidated if that written approval has not been obtained at the time that a special assessment district has been challenged. The language of the MCL 41.722(2) may indicate that the Township

had an obligation *to the Oakland County Board of Road Commissioners* to obtain written approval for the winter maintenance[1] at issue. However, there is nothing in the statute providing an assessed property owner with a right to enforce that obligation through a challenge to the special assessment in the Tax Tribunal. Moreover, in light of the record evidence suggesting that this winter maintenance is not a new practice and that it was sanctioned by the Oakland County Board of Road Commissioners, it is unclear how petitioner could demonstrate that he was harmed by any apparent failure to strictly comply with the approval requirement in MCL 41.722(2). Thus, the alleged failure in this regard is not a ground for invalidating the special assessment. See MCL 247.467;[2] MCL 247.351;[3] MCL 247.353;[4] see also *Cass Farm Co v City of Detroit*, 124 Mich 433, 438; 83

---

[1] Under MCL 41.722(1)(c), "maintenance" of public roads is one of the "improvements" that are authorized.

[2] MCL 247.467 provides in part:

A tax assessed under this act upon any property or sale of the property shall not be held invalid by any court of this state on account of any irregularity in any assessment, or on account of any tax roll not having been made, or proceeding had within the time required by law, or on account of the property having been assessed without the name of the owner, or in the name of any person other than the owner, or on account of any other irregularity, informality, omission, or want of any matter or form or substance in any proceeding *that does not prejudice the property rights of the person whose property is taxed. . . .*

[3] MCL 247.351 provides:

The township board of any township and the board of county road commissioners in which said township is located are hereby authorized and shall have power to enter into a contract to provide for the acquisition, construction, establishment, opening, altering, improving and maintaining of any highways within the township. Said highways shall be deemed to include such bridges, culverts, storm sewers and other drainage structures, and traffic control and regulatory devices, as may be necessary to provide a complete highway.

[4] MCL 247.353 provides:

For the purpose of obtaining funds to carry out the provisions of this act the township board of any township which is a party to such a contract is hereby authorized to pay its allocable share of the cost of any such highway improvements from any, all, or any combination of, the following methods of raising money therefor: (a) From the contingent fund of the township; (b) from the proceeds of special assessments levied on property benefited by the highway improvement, the procedures relative to making and collecting said special assessments to conform to the procedures provided by Act No. 188 of the Public Acts of 1954, being sections 41.721 to 41.737, inclusive, of the Compiled Laws of 1948: Provided, That when a contract has been duly executed as authorized by this act no petition shall be required to authorize the levy and collection of special assessments; (c) from

NW 108 (1900) (stating in a challenge to an assessment for road paving that "[w]hether there was a compliance with the ordinance [concerning advertising for bids for the project] or not, no one being harmed, the proceedings will not be set aside for that reason.").

Nonetheless, this Court need not resolve these specific questions at this juncture because we conclude that the Tax Tribunal erred as a matter of law based on its improper treatment of the evidentiary burden and the presumption of validity applicable to special assessments.

In light of this conclusion, it is also unnecessary to address the Township's additional argument that a challenge to the formation of the special assessment district in this case could only be brought within the time frame provided in MCL 41.725(1)(c), which provides that after a township board approves the sufficiency of a petition for an improvement if one is required, "the sufficiency of the petition is not subject to attack except in an action brought in a court of competent jurisdiction within 30 days after the adoption of the resolution determining the sufficiency of the petition." The logic of the Township's argument is not exactly clear, but this statutory provision is inapplicable under the circumstances presented on appeal because the Tax Tribunal did not base its decision on a determination regarding the sufficiency of a petition.

Finally, petitioner argues that the Tax Tribunal's ruling may be affirmed on the alternate ground that petitioner's property was improperly included in the special assessment district because his property is outside the Thendara Park Subdivision and receives no benefit from the winter maintenance. The improvement funded by a special assessment must confer a benefit on the assessed property for the special assessment to be valid. *Michigan's Adventure*, 290 Mich App at 335 ("A special assessment will be deemed valid if it meets two requirements: (1) the improvement subject to the special assessment must confer a benefit on the assessed property and not just the community as a whole and (2) the amount of the special assessment must be reasonably proportionate to the benefit derived from the improvement.").

Petitioner appears to essentially ignore any potential benefit from providing winter maintenance to the portion of Algonquin Boulevard running along petitioner's property and that petitioner's parcel was expressly included in the special assessment district by reference to the Parcel I.D. Number. Petitioner has not cited any authority to support his contention that a special assessment district is solely defined by the general title designated by a township for a special assessment district such that his parcel would be excluded because it is in a subdivision that does not match that title. Petitioner also does not cite any authority for the proposition that

---

proceeds of sale of bonds or short term notes which the township is hereby authorized to issue in anticipation of sales tax moneys to be returned to the township pursuant to section 23 of article 10 of the state constitution; or (d) from the proceeds of sale of general obligation bonds of the township which the township is hereby authorized to issue.

improvements to the road on which a corner lot's street address is located benefits the property while improvements to the road running alongside another side of the property do not.[5]

Nonetheless, the Tax Tribunal did not actually rule on this issue, instead basing its ruling solely on its determination regarding the Township's alleged failure to comply with MCL 41.722(2). We decline to resolve issues that were not ruled on by the Tax Tribunal and will instead allow the tribunal on remand to address these issues in the first instance. *Ashley Ann Arbor*, 299 Mich App at 158.

The Tax Tribunal erred as a matter of law by invalidating the special assessment on the ground that the Township did not provide proof of the written approval from the Oakland County Board of Road Commissioners contemplated by MCL 41.722(2) because (1) there is no language in MCL 41.722(2) requiring that proof of the requisite written approval must be submitted to the Tax Tribunal in order to sustain a special assessment against a challenge by an assessed property owner and (2) the Tax Tribunal ignored the presumption of validity and evidentiary burdens applicable in this context.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney

---

[5] Petitioner's reliance on *Carmichael v Village of Beverly Hills*, 30 Mich App 176; 186 NW2d 29 (1971), is misplaced because that case involved street paving, not snow plowing, and did not discuss the corner-lot problem. This Court stated in *Carmichael*, "The benefits conferred by initial paving really are less dirt, noise, mud, etc., which results from the new pavement In front of an owner's property, not from pavement down the street." *Id*. at 182. However, that is not the issue in the present case, where the portion of the road actually abutting petitioner's property will be plowed during the winter.